IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 22-cv-00545-CMA-SBP

JIMMY JONES,

    Plaintiff,

v.

MARSHALL CURRIER, III, individually and in his official capacity
as tow truck operator for J.R. Towing,
UNKNOWN DOE 7, individually,
TRACEY WOODROW, and
J.R. TOWING, INC.,

    Defendants.

## ORDER ON DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on Defendants J.R. Towing, Inc. and Marshall Currier's Motion to Dismiss. (Doc. # 77.) In their motion, J.R. Towing and Mr. Currier ("Private Defendants") ask this Court to dismiss them from this case under Rule 12(b) of the Federal Rules of Civil Procedure because Plaintiff Jimmy Jones cannot state a claim against them. For the following reasons, Private Defendants' motion is GRANTED IN PART.[1]

---

[1] As explained below, Private Defendants' motion addresses Mr. Jones's procedural due process claim. The instant motion does not challenge what the Court construes to be a Fifth Amendment takings claim within Mr. Jones's second claim for relief. (Doc. # 1 at 18.) Thus, Private Defendants cannot be fully dismissed from this case because one claim remains against them.

## I.    BACKGROUND

**A.    FACTS**

On March 7, 2021, on a public road in Pagosa Springs, Colorado, two Archuleta County Sheriff's Office ("ACSO") deputies saw Mr. Jones driving an unregistered Ford F250 pickup truck. (Doc. # 1 at 4–5.) Because the truck was unregistered, the officers issued Mr. Jones a traffic citation. *Id.* at 5–7, 11. Mr. Jones refused to sign the citation[2] which, per state law, prevented the officers from releasing him, so the officers placed Mr. Jones under arrest. *See* (Doc. # 21 at 15 n.8 (citing Colo. Rev. Stat. § 42-4-1707(6) (2016)).) With Mr. Jones under arrest, the officers had to choose: either impound the truck or leave it in the public parking space where Mr. Jones parked it. *See* (Doc. # 1 at 10.) The officers decided to impound the truck and, for that reason, contacted J.R. Towing, which sent Mr. Currier in a tow truck. *Id.* at 9–10.

On March 8, 2021, the day after Mr. Jones's arrest, someone employed by ACSO began processing the paperwork concerning the impounded truck. That person created a "tow vehicle summary" document that designated the impounded truck as "abandoned." *Id.* at 14. To provide notice that the truck was considered abandoned and would be sold in thirty calendar days, Mr. Jones alleges that ACSO sent written notice at some point between March 8 and June 7, 2021 to the truck's previous registered owner, one "Dustin Carter." *Id.* at 14. Mr. Jones further alleges that, on March 21, 2021,

---

[2] Mr. Jones maintains that his refusal to sign the citation was justified because the citation was a "fraudulent document." He thinks so because the citation listed two reasons for arrest, one being expired motor vehicle insurance, and Mr. Jones insists that he had valid insurance. However, whether he had valid insurance or not, driving an unregistered motor vehicle on a public road is generally considered a violation of Colorado law. Colo. Rev. Stat. § 42-3-103(4)(a)(IV) (2019).

Defendant Tracey Woodrow—an ACSO evidence technician who did not join the motion to dismiss—executed a motor vehicle bill of sale that transferred ownership of the impounded truck to J.R. Towing, the tow operator whose private lot the truck had been sitting in, unclaimed, for over thirty calendar days. *Id.* at 14. J.R. Towing, in turn, sold the pickup truck to an unnamed individual. *See id.* at 15.

**B.    PROCEDURAL HISTORY**

On March 4, 2022, Mr. Jones began this lawsuit, which originally asserted four claims for relief against fifteen defendants and demanded at least $196,150,469.07 in damages. *See generally id.* at 16–22. On February 23, 2023, this Court whittled the case down to four defendants—J.R. Towing, Mr. Currier, Ms. Woodrow, and "Unknown Doe 7." (Doc. # 27 at 14–16); *see generally* (Doc. # 21 at 11). Presently, only two of Mr. Jones's claims remain against Private Defendants: (1) a Fourteenth Amendment procedural due process claim because Private Defendants "facilitat[ed] the illegal dispossession of [the truck]" through "acts and omissions" and (2) a Fifth Amendment takings claim because Private Defendants "seiz[ed] and dispos[ed] of [the truck] and us[ed] the proceeds for public use without justly compensating [Mr. Jones]." (Doc. # 1 at 18–19.) On September 14, 2023, Private Defendants filed the instant motion to dismiss.

**II.    STANDARD OF REVIEW**

Under Rule 12(b)(6), a court may dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) occurs if the complaint contains impermissibly implausible factual allegations or

when the claims lack a cognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *e.g.*, *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004).

The court's role in a Rule 12(b)(6) motion is "to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted," not "weigh potential evidence that the parties might present at trial." *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010) (internal quotation omitted). To avoid impermissibly weighing evidence, a court takes all well-pleaded allegations in the plaintiff's complaint—*i.e.*, "plausible" allegations—as true and reasonably construes factual ambiguities or conflicts in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012).

Plausibility, in the context of a motion to dismiss, requires allegations with enough specificity to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility therefore means a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Not all factual allegations are considered plausible—*i.e.*, not all factual allegations receive this presumption. A court will not presume as true any conclusory allegations unsupported by facts or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678.

### III.   ANALYSIS

Private Defendants' motion to dismiss raises three arguments. Before turning to those arguments, however, the Court pauses to briefly explain why this Order will ignore

certain parts of Mr. Jones's response brief. First, the response asserts "facts" that are not contained in the complaint. *See* (Doc. # 82 at 4–5 (asserting, for example, that Mr. Jones mailed the ACSO an "Affidavit of Fact" that they supposedly received on May 18, 2021).) Facts not contained within the complaint generally cannot be considered when evaluating a motion to dismiss. *Cf. GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Because those unsupported facts would have had no material impact on the Court's analysis and conclusions, the Court chooses to exclude Mr. Jones's unsupported—and in some cases, outright contradicted[3]—extraneous factual assertions. The second problem: Mr. Jones spends much of his response attacking Colorado's vehicle registration laws, which not only demonstrates a fundamental misunderstanding of state and federal constitutional law but also doubles as Mr. Jones's second attempt to challenge a well-settled legal issue already addressed and resolved by this Court. *E.g.*, (Doc. # 82 at 1–3, 7–9); *but see* (Doc. # 27 at 12) (citation omitted) ("It is well established that states may constitutionally regulate the use of public roads through registration, licensure, and insurance requirements.") Although Mr. Jones is willing to waste his time further debating these laws and whether they apply to him, this Court is not.[4]

---

[3] *E.g.*, (Doc. # 82 at 3) (Mr. Jones inexplicably claiming he was not under arrest when his truck was impounded); (Doc. # 152-1 at 11) (Mr. Jones himself admitting that he did not mail an "affidavit of fact" directly to J.R. Towing, Mr. Currier, or Ms. Woodrow before the truck was transferred to J.R. Towing or sold to a third party).

[4] To briefly summarize Mr. Jones's views in case of appeal, many of Mr. Jones's arguments erroneously conflate the vehicle registration system with *ad valorem* property taxes. *See, e.g.*, (Doc. # 82 at 8–9 (citing Colo. Const. art. X §§ 3, 6)). Mr. Jones appears to have been led astray by one Colorado Supreme Court decision that was issued two decades before the General Assembly enacted the pertinent vehicle registration statute. *Sifuentes v. Weed*, 525

With those two preliminary issues addressed, the Court now turns to the motion's substantive arguments. As explained below, irrespective of whether the complaint adequately details Private Defendants' particular acts and plausibly alleges that said acts occurred under color of state law, the complaint cannot state a procedural due process claim against anyone—because Mr. Jones chose to deprive himself of the procedural protections that he now demands.

**A.    MR. JONES'S DUE PROCESS CLAIM MEETS PLEADING STANDARDS**

Private Defendants challenge the complaint's general adequacy in two ways. First, they assert that the complaint fails to specify how Private Defendants' particular actions caused a deprivation of Mr. Jones's procedural rights. (Doc. # 77 at 6–10.) Second, they contend that the complaint inadequately alleges that Private Defendants acted "under color of state law." *Id.* at 6, 11–12. Mindful of the relative lenience of pleading standards, the Court disagrees on both points.

---

P.2d 1157, 1160 (Colo. 1974) (en banc) ("The registration of vehicles is primarily a **taxing scheme** whereby the owner of a vehicle is assessed an annual fee in lieu of an ad valorem tax on his vehicle." (emphasis added)); *but see* Colo. Rev. Stat. § 42-3-103 (1994) (establishing vehicle registration payment requirements as privilege taxes, which are not subject to exemption via the Colorado constitution); *see generally Ard. v. People*, 182 P. 892, 66 Colo. 480 (1919) (explaining privilege taxes under Colorado law). Because the General Assembly had the final word, Section 42-3-103 invalidates the language from *Sifuentes* on which Mr. Jones heavily relies. Also, Mr. Jones seems to think that Colo. Rev. Stat. § 42-3-104(7) exempts his truck from registration requirements, but that statutory provision does not apply to him—it applies only to entities that are, as a threshold matter, exempt from *ad valorem* taxation, *e.g.*, military service members and government entities. Yet Mr. Jones inexplicably and repeatedly conflates himself (as an individual) with his truck to argue that his truck is a "household item[ ] and personal effect[ ]," which is mentioned in the statute, in an apparent attempt to circumnavigate the exception's narrow scope. (Doc. # 82 at 7.) However, this argument is nonsensical—Mr. Jones is an individual whose property is subject to *ad valorem* taxation, and a truck is obviously neither a "household item" nor "personal effect," which means Section 42-3-104(7)'s limited exception does not apply to him at all.

1. <u>Applicable Law</u>

§ 1983 creates a private cause of action for individuals seeking to vindicate a violation of their constitutional rights. Generally, to state an adequate claim under § 1983, a plaintiff's complaint must do two things: (1) it must "make clear exactly *who* is alleged to have done *what* to *whom*" and (2) it must allege that the named defendants are entities that acted "under color of state law." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original); *Lugar v. Edmonston Oil Co.*, 457 U.S. 922, 924 (1982). The first pleading requirement is relatively straightforward, but the second requires additional explanation considering it is known as a "paragon of unclarity." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (citation omitted).

Section 1983 does not apply to private actors unless their challenged actions are "fairly attributable to the State." *Lugar*, 457 U.S. at 937–39; *cf. Blum v. Yaretsky*, 457 U.S 991, 1002 (1982) (§ 1983 does not reach "merely private conduct, no matter how discriminatory or wrongful"); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) (citing *Blum*, 457 U.S. at 1004) ("Action taken by private entities with the mere approval or acquiescence of the State is not state action."). For a private party's conduct to be "fairly attributable to the State," two conditions must be met: (1) "the depravation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the [S]tate or by a person for whom the State is responsible" and (2) the private party charged with the depravation "must be a person who may fairly be said to be a state actor," either because he is a state official, because "he has acted

7

together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State."[5] *Lugar*, 457 U.S. at 397.

2. Discussion

The complaint includes four factual allegations about Private Defendants. First, Mr. Currier towed Mr. Jones's truck away in a J.R. Towing tow truck. (Doc. # 1 at 9.) Second, J.R. Towing failed to notify Mr. Jones that the truck was impounded and would be sold. *Id.* at 14. Third, J.R. Towing sold Mr. Jones's truck to an unnamed individual for $5,500. *Id.* at 15. Fourth, Mr. Currier and J.R. Towing "seiz[ed] and dispos[ed] of" Mr. Jones's truck and, through their "acts and omissions," "facilitat[ed] the illegal dispossession" of Mr. Jones's truck. (Doc. # 1 at 18–19.)

These four allegations clearly delineate "*who* did *what* to *whom*." The complaint alleges that J.R. Towing (via Mr. Currier) seized Mr. Jones's truck at ACSO's request (the "who"), impounded it for over thirty calendar days without notifying Mr. Jones before selling it to a third party (the "what"), which caused the "dispossession" of Mr. Jones's truck (the "to whom"). *Robbins*, 519 F.3d at 1250; (Doc. # 1 at 18–19). Private Defendants disagree, contending that the factual allegations cannot describe a constitutional violation since the Court already deemed the truck lawfully impounded,

---

[5] *Lugar* is not the only test for state action. There are four. *See, e.g., Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (citation omitted) (applying all four separate tests); *Yanaki v. Iomed, Inc.*, 415 F.3d 1204, 1212 (10th Cir. 2005) (Holloway, J., dissenting) (citing *Gallagher*). However, the parties do not cite any of these tests, so the Court chooses not to overcomplicate its analysis by discussing these tests. Moreover, the state action calculus—under any approach—would not affect the Court's conclusion that Mr. Jones cannot state a due process claim because none of the approaches would excuse Mr. Jones's deliberate choice to not register his truck.

but the impoundment's lawfulness does not speak to whether J.R. Towing lawfully sold the truck. (Doc. # 83 at 2–3.) The constitutional violation is not limited to impoundment—Mr. Jones's alleged deprivation, as he frames it, includes selling the truck without notifying him. *Compare* (Doc. # 77 at 12), *with* (Doc. # 83 at 4). As explained above, even a lawfully impounded truck cannot be sold without providing adequate notice and waiting thirty calendar days—the procedures applicable to selling an abandoned vehicle and a law enforcement officer's authority to order a vehicle impounded are separate inquiries. Private Defendants' argument inexplicably proceeds on the assumption that the alleged deprivation is limited to the impoundment of the truck at ACSO's request, which is an untenably narrow characterization of the alleged deprivation that this Court cannot accept.

The complaint also adequately alleges that Private Defendants acted "under of color of state law." Private Defendants concede the first *Lugar* prong. (Doc. # 77 at 11.) As for the second prong, Private Defendants reason that the resale of the truck was an entirely private act because ACSO followed the statutory protocol for abandoned impounded vehicles. *See* (Doc. # 77 at 11–12.) However, this contention is, at best, a *non sequitur*; whether ACSO allegedly followed the proper protocol says nothing about the extent to which J.R. Towing and Mr. Currier "acted together with [or] obtained significant aid from" ACSO. *Lugar*, 457 U.S. at 937. Unlike Private Defendants' arguments, however, the complaint does speak to that issue. The complaint alleges that Private Defendants seized the truck and stored it in an impound lot on behalf of the state, which shows that ACSO relied on Private Defendants to impound the truck—a

private defendant acting "together with [or] obtain[ing] significant aid from state officials." *Lugar*, 457 U.S. at 937; (Doc. # 83 at 4) (disclaiming any "input on the decision[-]making when it came to the impoundment of the vehicle"). Moreover, without ACSO eventually transferring the title, J.R. Towing could not lawfully sell the truck. These allegations show action under color of state law, and Private Defendants offer no reason to conclude otherwise.

In sum, the Court's review of the complaint reveals adequately detailed allegations of Private Defendants' particular actions, and those actions, if taken as true, occurred under color of state law. Consequently, the Court finds that the complaint meets Section 1983's pleading standards.

**B.     MR. JONES DELIBERATELY WAIVED HIS RIGHT TO NOTICE**

Private Defendants argue that Mr. Jones cannot state a procedural due process violation because the factual allegations show that Mr. Jones was not the truck's registered owner, which means he cannot claim an entitlement to notice about the truck's abandonment and sale. (Doc. # 77 at 8–10); (Doc. # 83 at 5–6). The Court agrees.

Colorado law prohibits the abandonment[6] of vehicles on any private property other than that of the vehicle's owner. Colo. Rev. Stat. § 42-4-2103(1)(b) (2017). To manage motor vehicles abandoned in private lots, state law permits the lot owner to sell

---

[6] An abandoned vehicle is defined as "[a]ny motor vehicle that is left on private property without the property owner's consent, towed at the request of the property owner, and not removed from the impound lot by the vehicle owner within forty-eight hours . . . ." Colo. Rev. Stat. § 42-4-2102(1) (2009).

10

the unclaimed vehicle—provided that reasonable attempts are first made to notify the vehicle's previous registered owner. *Id.* at 2103(4). The statute requires contacting local law enforcement agencies and the Colorado Department of Transportation, who then provide information about the vehicle. Colo. Rev. Stat. §§ 42-4-2103(2), 3(a)–(c) (2017). Assuming the vehicle has a registered owner, that person must be notified via certified mail of the truck's abandonment and forthcoming sale. Colo. Rev. Stat. § 42-4-2103(4)(a)–(c) (2017). Once the most recent registered owner is notified via certified mail, that person has thirty calendar days from the postmark date to claim the vehicle. After thirty days, the unclaimed vehicle is eligible for sale. Colo. Rev. Stat. § 42-4-2103(4)(d) (2017); *see also* Colo. Rev. Stat. § 42-4-2107 (2017) (authorizing third-party tow companies to sell abandoned vehicles along with their contents). Critically, for purposes of the instant case, ***a vehicle owner's failure to register his vehicle "is deemed a waiver of the owner's right to be notified" of the vehicle's abandonment and impending sale***. Colo. Rev. Stat. § 42-4-2108(1) (2017) (emphasis added).

Unfortunately for Mr. Jones, his unabashed admission that he purposefully neglected to register the truck under his name proves fatal to his procedural due process claim. *See, e.g.*, (Doc. # 1 at 5; Doc. # 82 at 2, 7–9.) Colorado law clearly states that a vehicle owner's failure to register his vehicle is a waiver of his right to notice of the vehicle's abandonment and sale. Colo. Rev. Stat. § 42-4-2108(1) (2017). As a result of his failing to register the truck, Mr. Jones was not entitled to notice via certified mail. As such, he was not deprived of any due process. "Having ignored the available procedures," Mr. Jones "is in no position to argue that" said procedures were

11

unlawfully withheld from him. *Weinrauch v. Park City*, 751 F.2d 357, 360 (10th Cir. 1984) (citation omitted). Put differently, Mr. Jones cannot reject the system yet later complain that it failed him.

     Mr. Jones disagrees but, for various reasons explained below, his counterarguments are conceptually flawed. First, Mr. Jones emphasizes that his vehicle was abandoned on private property (Doc. # 82 at 2), which is irrelevant because Colorado law does not limit the authorized sale of abandoned vehicles to those left on public property. Colorado law entitles private property owners (including tow operators that impound vehicles in private lots at the request of local law enforcement agencies) to sell abandoned vehicles that go unclaimed for thirty calendar days. Colo. Rev. Stat. §§ 42-4-2103, 2107 (2017). Next, Mr. Jones complains that he received no notice of the proper procedures applicable to his truck, where it was taken and stored, or how he could recover it. (Doc. # 82 at 4). Yet Mr. Jones's argument ignores that his own unorthodox and counterintuitive reading of Colorado's motor vehicle registration laws inspired him to avoid the state's vehicle registration database, which meant that the last registered owner of the truck was Mr. Carter, who received notice. The ACSO satisfied its notice obligations by sending certified mail to Mr. Carter.[7] Thus, Mr. Jones cannot

---

[7] Beyond those two arguments, Mr. Jones's remaining counterarguments attempt to demand inapplicable administrative proceedings. *See id.* at 9–10. Mr. Jones's demand for a noticed hearing under Colo. Rev. Stat. § 42-13-101 fails for the same reason that his procedural due process claim fails. Section 42-13-101(6) vests a right to notice in only the most recent registered owner of the vehicle—which is not Mr. Jones.

12

fault ACSO for failing to send him notice and, for that, he has no one to blame but himself.

"[I]t appears beyond doubt that [Mr. Jones] can prove no set of facts in support of his [procedural due process] claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), *abrogated on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The fact of the matter is that the property interest asserted by the complaint does not apply to Mr. Jones, so he has not stated a procedural due process claim validly applicable to anyone in this case. Consequently, Private Defendants' Motion to Dismiss (Doc. # 77) is GRANTED insofar as it seeks dismissal of Mr. Jones's procedural due process claim.

## IV.  CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- Plaintiff's Second Claim for Relief, insofar as it is construed as a procedural due process claim, is DISMISSED WITH PREJUDICE for failure to state a claim.[8]

---

[8] Although dismissal of a *pro se* complaint is typically without prejudice, "it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (quoting *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999)).

- This case shall proceed only as to Plaintiff's Second Claim for Relief, which the Court construes as a Takings claim under the Fifth Amendment to the U.S. Constitution, against Defendants Tracey Woodrow, J.R. Towing, Inc., and Marshall Currier in their individual capacities.

DATED: July 15, 2024

BY THE COURT:

*[signature]*
CHRISTINE M. ARGUELLO
Senior United States District Judge